United States District Court
Southern District of Texas
**ENTERED**
March 04, 2019
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| **PRISCILLA ALEJANDRA RUIZ,** § | | |
| Plaintiff, § | | |
| § | | |
| v. § | | Civil Action No. B-18-53 |
| § | | |
| **NANCY A. BERRYHILL,** § | | |
| **COMMISSIONER OF** § | | |
| **SOCIAL SECURITY,** § | | |
| Defendant. § | | |

### REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

Pending before the Magistrate Judge is the petition for review of the denial of Disability Insurance Benefits filed by Priscilla Alejandra Ruiz ("Ruiz"). Dkt. No. 1.

Having reviewed the record and the pleadings, the Court recommends that the petition be denied. This recommendation follows from the fact that there is substantial evidence to support the findings of the Administrative Law Judge ("ALJ").

**I. Background**

   **A. Procedural History**

On September 24, 2013, Ruiz applied to receive Disability Insurance Benefits and Supplemental Security Income. Dkt. No. 21-1, p. 15.[1]  Ruiz claimed that her disability effective date was April 1, 2006. Id.

On April 30, 2014, Ruiz's claim was denied. Id.  On May 22, 2015, after reconsideration, Ruiz's claim was again denied. Id. On October 24, 2016, a hearing was held before an ALJ. Id. On April 24, 2017, the ALJ decided that Ruiz was not entitled to benefits. Id, p. 34. On January 23, 2018, the Appeals Council denied Ruiz's timely request for review. Id, p. 6. Ruiz has sought timely review of the Commissioner's decision in this Court.

---

[1] The citation to the record refers to the Bates-stamped number on each record page.

### B. Factual Context

Ruiz was born in August 1983 and was 23 years old at the time of her claimed disability onset date. Dkt. No. 21-1, p. 35.

Ruiz had previously worked as a retail sales clerk, a receptionist, and as a medical provider for a rehabilitation facility. Dkt. No. 21-1, pp. 18-20. She graduated from cosmetology school. Id. She is a single mother to two children, including one child who has battled cancer. Dkt. No. 27. At some unspecified date, she began receiving Supplemental Security Income ("SSI"). On April 30, 2014, her SSI was discontinued after the Social Security Administration determined that she was "now able to work." Dkt. No. 21-1, p. 47.

The ALJ found that Ruiz suffered from "generalized anxiety disorder and affective disorder." Dkt. No. 21-1, p. 20. These findings, generally, are undisputed. Instead, Ruiz disputes the ALJ's finding that Ruiz has the residual functional capacity (or "RFC") to still perform work.[2]

### C. Ruiz's Medical History

During her treatment and the disability process, Ruiz was examined by multiple doctors. A summary of their observations and findings follows.

On April 20, 2004, Dr. Bert Levine conducted a "full battery" psychological report on Ruiz. Dkt. No. 21-6, p. 299. Dr. Levine concluded that Ruiz "presented a history of depression that is documented by medical records" and that "[r]ecords, observations and test results" were consistent with that diagnosis. Id., p. 302. Dr. Levine also noted that Ruiz "has a documented diagnosis of a panic disorder without agoraphobia," and that test records revealed "anxiety with a phobic quality." Id.

---

[2] Ruiz is proceeding pro se in this court. Dkt. No. 1. In analyzing Ruiz's claim, the Court is required to construe allegations by pro se litigants liberally, to ensure that their claims are given fair and meaningful consideration, despite their unfamiliarity with the law. Haines v. Kerner, 404 U.S. 519, 520 (1972). Ruiz's complaint and her briefs all focus upon her psychological limitations and her inability to work. Dkt. Nos. 1, 27. In construing her complaint liberally, it appears that she is alleging that the ALJ erred in determining her RFC to work. As such, the discussion of the facts of this case will be limited to the facts which bear upon Ruiz's mental health and capacity to work.

On July 25, 2012, Ruiz went to the emergency room at Valley Baptist Medical Center in Brownsville, complaining of headache, facial cramping, insomnia, dizziness and anxiety. Dkt. No. 21-9, p. 499. The examination showed that she was "oriented to person, place, time and situation" with "normal memory" and that her "motor functions [were] normal." Id, p. 500. Ruiz was discharged after her symptoms improved and she was given a Xanax prescription to use as needed. Id., p. 501.

On September 18, 2013, Ruiz was seen by Dr. Francisco Torres for a psychiatric evaluation. Dkt. No. 21-11, p. 557. Dr. Torres diagnosed Ruiz with "persistent depressive disorder," anxiety and "adjustment disorder with mixed anxiety and depressed mood." Id., p. 560. Dr. Torres also noted that Ruiz had a Global Assessment of Function ("GAF")[3] Score of 55. Id. This score "is indicative of moderate difficulty in social, occupational or school functioning." Dkt. No. 21-1, p. 26.

At a followup visit on November 14, 2013, Dr. Torres noted that Ruiz "hasn't been consistent with her followup appointments, but lately she wanted to continue the treatment as she has been struggling with anxiety and depression." Dkt. No. 21-11, p. 563. Ruiz was prescribed "Lexapro for anxiety and depression and Trazodone for insomnia." Id., p. 564.

On December 11, 2013, Ruiz saw Dr. Torres for another followup visit. Dkt. No. 21-11, p. 566. Ruiz reported that she had been improving after taking her meds, "but she wasn't able to tolerate the Lexapro because it was making her feel weird and dizzy." Id. (internal quotations omitted). Ruiz discontinued the Lexapro prescription and did not wish "to try any other antidepressant at this time as she feels her moods are better." Id., p. 567.

On March 5, 2014, Ruiz had another followup visit with Dr. Torres. Dkt. No. 21-11, p. 570. At that time, Ruiz was unable to take any "psychiatric medications as she is on her

---

[3] "GAF is a standard measurement of an individual's overall functioning level with respect only to psychological, social, and occupational functioning." Boyd v. Apfel, 239 F.3d 698, 701 n. 2 (5th Cir. 2001) (citing American Psychiatric Ass'n Diagnostic and Statistical Manual of Mental Disorders at 32 (4th ed. 1994)(DSM-IV)) (internal quotation marks omitted).

first trimester of pregnancy." Id., p. 571. Ruiz "agreed to rely more on psychotherapy for the time being." Id.

On April 2, 2014, Ruiz had another follow up visit with Dr. Torres, reporting that her mood was better and that she was "not as depressed as before." Dkt. No. 21-11, p. 573.

On May 14, 2014, at her next follow up visit with Dr. Torres, Ruiz reported that she was no longer seeing a counselor and was "in low spirits" and "feels desperate and pressured." Dkt. No. 21-11, p. 576. She was prescribed Prozac for her depression. Id, p. 577-78.

On May 29, 2014, Ruiz reported to Dr. Torres that Prozac was helping, but she was anxious "after learning that her baby might have Down's Syndrome." Dkt. No. 21-11, p. 579. Ruiz continued with her Prozac prescription. Id., p. 581.

On October 8, 2014, Ruiz reported to Dr. Torres that she "hasn't taken her medications as prescribed as her moods have been consistently better," and she hadn't felt anxious or depressed. Dkt. No. 21-12, p. 621. Ruiz agreed to go off her medications temporarily because she was scheduled to give birth within the next two weeks and did not want the medications to impact her child. Id.[4]

On January 20, 2015, Ruiz had a follow up visit with Dr. Torres, where she reported that she was in a good mood and did not feel anxious or depressed, because she felt "the medication is working." Dkt. No. 21-12, p. 618. Again, Ruiz was prescribed Lexapro for depression and Trazodone for insomnia. Id, p. 620.

On April 2, 2015, Ruiz was seen by Dr. Torres, informing him that she was feeling depressed, anxious and had trouble sleeping. Dkt. No. 21-12, p. 613. Ruiz felt that her medications were not helping and she was "doing some sort of counseling with a Scientologist." Id. Ruiz continued her prescriptions for Lexapro and Trazodone. Id, p. 617. At this appointment, Ruiz's GAF score was 63. Id.

---

[4] There is no indication in the record as to whether her child was born with Down's Syndrome.

4

On June 10, 2015, Ruiz had another follow up visit with Dr. Torres, where she reported that she continued to feel depressed and suffered from "crying spells" and anxiety. Dkt. No. 21-12, p. 608. Ruiz continued her prescriptions for Lexapro and Trazodone. Id, p. 610-11. Her GAF score was noted as 50.[5] Id.

**D. Disability Evaluations**

Two state agency consultants – Dr. Charles Lankford and Dr. Robert Gilliland – reviewed Ruiz's medical records regarding her mental abilities as part of the SSD process. Furthermore, she was also personally interviewed by Dr. G. Alan Trimble and Dr. Shelia Bailey as part of the process.

**1. Dr. Charles Lankford**

On April 14, 2014, Dr. Lankford, a state agency medical consultant, reviewed Ruiz's medical records in determining a residual functional capacity assessment. Dkt. No. 21-11, pp. 587-89. Dr. Lankford found that Ruiz suffered from affective disorders and anxiety-related disorders. Id., p. 592. He found that she had moderate difficulties in maintaining social functioning, mild restriction of daily living activities, and mild difficulty in maintaining concentration, persistence and/or pace. Id., p. 601.

Dr. Lankford opined that Ruiz was moderately limited in her abilities to: (1) "understand and remember detailed instructions"; (2) "carry out detailed instructions"; (3) "maintain attention and concentration for extended periods"; (4) "complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods": (5) "respond appropriately to changes in the work setting"; and, (6) "be aware of normal hazards and take appropriate precautions." Id. Dr. Lankford further opined that Ruiz "is able to understand, remember and carry out detailed, but not complex, instructions, make basic decisions, concentrate for extended periods, interact with others and respond to changes." Id.

---

[5] The Court notes that GAF scores tend to fluctuate, even from day to day. Eaton v. Astrue, No. 08-CV-186-PB, 2009 WL 2015903, at *7 (D.N.H. July 7, 2009); I.H. Monrad Aas, Guidelines for Rating Global Assessment of Functioning, Annals of General Psychiatry (2011).

### 2. Dr. Robert Gilliland

On October 1, 2014, Dr. Gilliland, a state agency medical consultant, also reviewed Ruiz's medical records to assess her residual functional capacity. Dkt. No. 21-12, p. 607. Dr. Gilliland found that while Ruiz had ongoing psychiatric issues, she showed concentration and adequate attention during medical appointments and her cognitive functioning was intact. Id. Dr. Gilliland also noted that Ruiz consistently reported anxiety, but was able to go out alone, including to the medical exams. Id. He found that Ruiz's alleged limitations were "not fully supported" by the medical record. Id.

### 3. Dr. G. Alan Trimble

Earlier, on December 14, 2010, Dr. Trimble actually interviewed Ruiz – as opposed to Dr. Lankford and Dr. Gilliland, who reviewed Ruiz's records – as part of the disability process. Dkt. No. 21-10, p. 536. Dr. Trimble diagnosed Ruiz with "major depressive disorder" and "generalized anxiety disorder." Id, p. 541. Dr. Trimble stated that Ruiz had "fair" reasoning abilities, and "poor" occupational, personal and social capabilities, but did not explain how he arrived at those conclusions. Id., p. 540. Dr. Trimble further opined that Ruiz's prognosis was "guarded" with current treatment, and "poor" without treatment. Id., p. 541.

### 4. Dr. Shelia Bailey

The second doctor to actually interview Ruiz, was Dr. Bailey. Dr. Bailey conducted a clinical interview of Ruiz on December 1, 2016. Dkt. No. 21-13, p. 639. Dr. Bailey concluded that Ruiz suffered from "adjustment disorder, with depressed mood" and that her prognosis was "fair, with treatment, compliance and support." Id., p. 642. Dr. Bailey further concluded that Ruiz was not impaired in her ability to carry out instructions or to interact with co-workers and the general public. Id., pp. 643-44.

Before turning to and examining the specifics of the ALJ's decision in Ruiz's case, it is first necessary to understand the disability determination process, as it relates to disability applications.

## II. Determining Disability – The Five-Step Process

A claimant must be disabled to receive benefits under Title II of the Social Security Act. 42 U.S.C. § 423(d)(1)(A). Disability is defined as the "inability to engage in any substantial gainful activity by reason of any <u>medically determinable</u> physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." <u>Id</u>. (emphasis added).

To determine whether a claimant is disabled, the Commissioner is required to employ a sequential five-step process. 20 C.F.R. § 404.1520; <u>Greenspan v. Shalala</u>, 38 F.3d 232, 236 (5th Cir. 1994). The burden of proof lies with the claimant at each step; except for step five, which contains a shifting burden. <u>Bowen v. Yuckert</u>, 482 U.S. 137, 146 n. 5 (1987). If at any stage the claimant fails to make the required showing, the evaluation process stops and the claimant is determined to not be disabled. <u>Harrell v. Bowen</u>, 862 F.2d 471 (5th Cir. 1988).

1. **Step One**

In the first step, the claimant must show that he or she is not currently engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). Substantial gainful activity is defined as work that involves "doing significant and productive physical or mental duties" and is "done (or intended) for pay or profit." 20 C.F.R. § 404.1510. If the claimant is working and the work constitutes substantial gainful activity, the claimant is not disabled. 20 C.F.R. § 404.1520(b).

2. **Step Two**

The second step of the process, requires the claimant to show that his or her impairment is medically severe. 20 C.F.R. § 404.1520(a)(4)(ii). A severe impairment is one which "significantly limits [the] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). Unless the impairment is expected to result in death, it must have lasted – or be expected to last – for at least 12 months. 20 C.F.R. § 404.1509. If a claimant cannot show a medically severe impairment that meets the duration requirement, the claimant is not disabled under the law. 20 C.F.R. § 404.1520(c). As noted, this showing applies to both physical and mental impairments.

### 3. Step Three

At the third step, the claimant must demonstrate an impairment that is listed in Appendix 1 to 20 C.F.R. § 404.1520(p) (a "listed impairment") – or is equal to a listed impairment. 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant can show that the impairment meets the duration requirement and is a listed impairment, then he or she is adjudged to be disabled without regard to age, education, or work experience. 20 C.F.R. § 404.1520(d). If the claimant cannot show a listed impairment – or its equivalent – the process continues to step four. 20 C.F.R. § 404.1520(e).

### 4. Step Four

In step four, the claimant must show that he or she lacks the "residual functional capacity" to perform past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). Past relevant work is defined as gainful activity performed within the last 15 years, where the claimant's employment lasted long enough for the claimant to learn how it is performed. 20 C.F.R. § 404.1560(b)(1).

#### a. Residual Functional Capacity.

Residual functional capacity "is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities." Irby v. Barnhart, 180 Fed.Appx. 491, 493 (5th Cir. 2006)(unpubl.) (citing Social Security Ruling 96-8p).

In addressing the symptoms raised by the claimant, the ALJ is required to follow a two-step process. 20 CFR § 404.1529(a); Herrera v. Commissioner of Social Sec., 406 Fed.Appx. 899, 905 (5th Cir. 2010) (unpubl.). "Both SSR 96-7p and 20 C.F.R. § 404.1529 emphasize that subjective symptoms alone, absent some indication that they are supported by objective medical evidence, fail to support a disability finding." Salgado v. Astrue, 271 Fed.Appx. 456, 460 (5th Cir. 2008) (unpubl.). Thus, to establish a disability, the criteria in both of the following steps must be satisfied.

8

The first step is a determination of whether the claimant suffers from a medically determinable impairment that is "reasonably capable of producing" the claimed symptoms. SSR 96-7p. Claimed symptoms "will not be found to affect [one's] ability to do basic work activities unless medical signs or laboratory findings show that a medically determinable impairment(s) is present." 20 CFR § 404.1529(b). The ALJ proceeds to the second step only if the Claimant is found to have a medically determinable impairment that could cause the alleged symptoms. Winget v. Astrue, 2007 WL 4975206, *10 (W.D. Tex. 2007) (unpubl.). In other words, if the evidence does not objectively support a conclusion that the alleged cause is reasonably capable of producing the symptom, then a finding of no disability is required.

On the other hand, if the medical evidence objectively identifies an impairment that could reasonably produce the claimed symptom, the inquiry turns to the severity and impact of that symptom. The second step is to evaluate the "intensity, persistence, and limiting effects of the individual's symptoms" on their ability to do basic work activities. SSR 96-7p. This includes the symptoms and impacts of depression and anxiety. Dickerson v. Colvin, No. 3:12-CV-131 CDL, 2013 WL 5676639, at *6 (M.D. Ga. Oct. 16, 2013). In performing this evaluation, the ALJ considers the objective medical evidence; the claimant's testimony; the claimant's daily activities; the location, duration, frequency, and intensity of the individual's symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms. Id.

The ALJ also considers treatment – other than medication – that the individual receives or has received for relief of pain or other symptoms. Finally, the ALJ also considers any other factors relating to the claimant's functional limitations and restrictions resulting from pain or other symptoms. Id.

If the ALJ finds that the claimant's current RFC is incompatible with the ability to perform his or her prior relevant work, the process moves to step five.

### 5. Step Five

The fifth step requires the Commissioner to show that the claimant is capable of performing other work. 20 C.F.R. § 404.1520(a)(4)(v). Once the Commissioner makes the requisite showing, the burden shifts to the claimant to rebut the Commissioner. Masterson v. Barnhart, 309 F.3d 267, 272 (5th Cir. 2002).

The Commissioner considers the claimant's RFC as well as the claimant's age, education, and experience, in determining whether the claimant can perform other substantial work within the national economy. 20 C.F.R. § 404.1520(g)(1); Masterson, 309 F.3d at 272. Based upon these considerations, the Commissioner must show that the claimant can perform work in the national economy and that such work exists in significant numbers in that economy.

If the Commissioner can show that the claimant can perform other substantial work within the national economy, the claimant is adjudged not to be disabled. 20 C.F.R. § 404.1520(g)(1). If the Commissioner fails to show that the claimant is capable of performing other work, or if the claimant successfully rebuts the Commissioner's findings, the claimant is found to be disabled and is entitled to disability benefits. Id.

### III. The ALJ's Decision

In step one, the ALJ found that Ruiz had not engaged in substantial gainful activity since July 2009. Dkt. No. 21-1, pp. 17-20.  That finding is not challenged.

In step two, the ALJ found that Ruiz suffered from generalized anxiety disorder and affective disorder. Dkt. No. 21-1, pp. 20-21.  This finding is also unchallenged.

The ALJ – in her step three analysis – found that Ruiz did not have an impairment or combination of impairments that "equal[ed]" a listed impairment, moving the process to step four. Dkt. No. 21-1, pp. 21-22. This finding is also unchallenged..

In step four, the ALJ found that Ruiz had the RFC to perform "the physical requirements of work at all exertional levels." Dkt. No. 21-1, p. 27. The ALJ determined that Ruiz was mentally "able to understand, remember and carry out instructions consistent with 1- to 2-step operations, working with data and objects rather than with people, and

10

performing short-cycle, repetitive tasks with minimal change in environment." Id. She further found that Ruiz "requires a setting that is goal-oriented verses requiring that she maintain a specified pace consistently throughout a workday," and that Ruiz "can tolerate occasional interaction with the public and she remains able to interact appropriately with supervisors and co-workers." Id. "Within that content, the claimant remains able to sustain attention in 2-hour blocks throughout an 8-hour workday; complete assigned tasks with a brief reminder or redirection once or twice per day to ensure timeliness and accuracy; exercise sufficient judgment to make basic-work related decisions; and adhere to a normal schedule." Id.

In arriving at this finding, the ALJ gave "moderate weight to the GAF scores," noting that they had "limited probative value," but gave "greater weight to the pattern that the GAF scores display." Dkt. No. 21-1, p. 31.

The ALJ gave "substantial weight" to Dr. Lankford's opinion – who did not personally examine Ruiz, but reviewed all of her medical records – finding that his assessment was "based upon the substantial evidence of the record." Dkt. No. 21-1, p. 31. The ALJ did note that she reduced Ruiz "to unskilled work out of [an] abundance of caution with respect to stress level." Id.

The ALJ gave "moderate weight" to Dr. Trimble's opinion, because he was not "functionally specific with respect to [Ruiz's] reasoning, occupational, personal and social abilities." Dkt. No. 21-1, p. 34. The ALJ also found that the "substantial evidence of record also does not support that the claimant's prognosis is guarded with current treatment and poor without treatment." Id.

The ALJ gave "moderate weight" to Dr. Bailey's opinion. Dkt. No. 21-1, p. 34. Dr. Bailey had opined that Ruiz's ability to understand and carry out instructions as well her abilities to interact with others were not impacted by her impairments; the ALJ found that "the substantial evidence of record supports" the conclusion that Ruiz's impairments do impact those specific skills. Id.

The ALJ also generally noted that Ruiz's examinations only showed "self-reported" deficits caused by her impairments, rather an objective deficits. Dkt. No. 21-1, p. 32. The ALJ also noted that Ruiz "had long gaps in treatment and she had long periods without medication, despite access to care through Supplemental Security Income and Medicaid." Id. The ALJ found that Ruiz was unable to perform her past relevant work as a retail sales clerk, manicurist and receptionist. Dkt. No. 21-1, p. 32.

Based upon the testimony of the vocational expert, in step five, the ALJ found that there were sufficient jobs in the national economy, such as bundle clerk, janitor, and dishwasher, that Ruiz could still perform. Dkt. No. 21-1, p. 33.

Based upon Ruiz's RFC and her ability to still perform certain work, the ALJ concluded that Ruiz was not disabled. Dkt. No. 21-1, p. 33-34.

## IV. Applicable Law

### A. Standard of Review

The Court's review of the Commissioner's decision to deny disability benefits is limited to two inquiries: (1) whether the final decision is supported by "substantial evidence;" and (2) whether the Commissioner used the proper legal standards to evaluate the evidence. Newton v. Apfel, 209 F.3d 448, 452 (5th Cir. 2000). "Substantial evidence is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion." Spellman v. Shalala, 1 F.3d 357, 360 (5th Cir. 1993) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971)). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. Moore v. Sullivan, 919 F.2d 901, 904 (5th Cir. 1990). If the Commissioner's findings are supported by substantial evidence, they are conclusive and must be affirmed. 42 U.S.C. § 405(g); Brown v. Apfel, 192 F.3d 492, 496 (5th Cir. 1999). "Conflicts within the evidence are not for the court to resolve." Selders v. Sullivan, 914 F.2d 614, 617 (5th Cir. 1990).

The decision by the ALJ must "stand or fall" on the rationale set forth in the ALJ's opinion. Newton v. Apfel, 209 F.3d at 455. The Court will not uphold the ALJ's decision

by finding or creating a different, better, or more adequate basis. Securities and Exchange Commission v. Chenery Corp., 332 U.S. 194, 196 (1947). "Reviewing courts do not consider rationales supporting an ALJ's decision that are not invoked by the ALJ." Orr v. Commissioner of Social Security Administration, Civil No. 3:08-CV-1592-K, 2009 WL 2337793 at *9 (N.D. Tex. July 27, 2009) (citing Bagwell v. Barnhart, 338 F. Supp.2d 723, 735 (S.D. Tex. 2004)).

Furthermore, the Court generally employs a harmless error standard in reviewing administrative proceedings. Mays v. Bowen, 837 F.2d 1362, 1364 (5th Cir. 1988) ("Procedural perfection in administrative proceedings is not required"). The Court will not reverse a judgment unless "the substantial rights of a party have been affected." Id. (remand was not warranted when the claimant would not have been found disabled, even if the Court applied his proffered standard).

**V. Analysis**

As previously noted, the Court must construe Ruiz's pro se complaint liberally, to ensure that her claims are given fair and meaningful consideration. Haines, 404 U.S. at 520. The crux of Ruiz's claim is that she is completely disabled and unable to work. Dkt. No. 27. Despite this claim, the ALJ found that Ruiz was unable to perform her previous type of work, but was able to perform other jobs within her RFC. There does not appear to be any dispute regarding the ALJ's findings at the first three steps; Ruiz is challenging the ALJ's finding at step four, that she can still perform work. Accordingly, the Court will focus on whether the ALJ's findings regarding Ruiz's RFC are supported by sufficient evidence.

The review of Ruiz's claim has one overarching limitation: it is not this Court's role to determine if Ruiz is disabled. Instead, the Court is to determine whether the ALJ's decision is supported by substantial evidence. Carey v. Apfel, 230 F.3d 131, 135 (5th Cir. 2000) ("The court does not reweigh the evidence in the record, try the issues de novo, or substitute its judgment for the Commissioner's, even if the evidence weighs against the Commissioner's decision."). With this in mind, the Court turns to the question of whether the ALJ's decision is supported by substantial evidence.

In determining Ruiz's RFC, the ALJ relied, in large part, on the opinion of Dr. Lankford. Dkt. No. 21-1, p. 31.  Dr. Lankford opined that Ruiz was moderately limited in her abilities to: (1) "understand and remember detailed instructions"; (2) "carry out detailed instructions"; (3) "maintain attention and concentration for extended periods"; (4) "complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods": (5) "respond appropriately to changes in the work setting"; and, (6) "be aware of normal hazards and take appropriate precautions." Dkt. No. 21-11, pp. 587-89. Dr. Lankford further opined that Ruiz "is able to understand, remember and carry out detailed, but not complex, instructions, make basic decisions, concentrate for extended periods, interact with others and respond to changes." Id.  The ALJ did note that she reduced Ruiz "to unskilled work out of [an] abundance of caution with respect to stress level." Id.

The Court notes that of all of the medical opinions, Dr. Lankford's evaluation identified the greatest number of limitations experienced by Ruiz, as a result of her disability. For example, Dr. Bailey concluded that Ruiz was not impaired in her ability to carry out instructions or to interact with co-workers and the general public. Dkt. No. 21-13, p. 643-44. Meanwhile, Dr. Trimble stated that Ruiz had "poor" occupational, personal and social capabilities, but he did not explain the exact limitations that Ruiz would face. Dkt. No. 21-10, p. 540.  Accordingly, the ALJ gave only moderate weight to Dr. Trimble's opinion when formulating the RFC.  Thus, Dr. Lankford's opinion was the most favorable one to Ruiz and the ALJ used it to formulate the RFC.  Furthermore, the ALJ went a step further and found that Ruiz could only perform unskilled work, affording her that benefit of the doubt.

The decision regarding RFC is the province of the Commissioner and not the doctors. 20 C.F.R. § 404.1527(e)(2).  An "ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion." Eggins v. Astrue, 351 F. App'x 909, 910 (5th Cir. 2009) (quoting Bradley v. Bowen, 809 F.2d 1054, 1057 (5th Cir.1987)). Furthermore, "[t]he determination of the disabling nature of the claimant's [ailments] is within the ALJ's

14

discretion and is entitled to considerable deference." McCall v. Shalala, 24 F.3d 240 (5th Cir. 1994).

In this case, the ALJ relied on Dr. Lankford's RFC opinion, but reduced Ruiz to unskilled work to ensure that she could meet the stress level of her employment. Dr. Lankford's opinion constitutes substantial evidence supporting the finding that Ruiz can perform some work. "A RFC assessment prepared by a state agency medical consultant, provided it is a function-by-function assessment . . . constitutes substantial evidence, at least where it is not wholly conclusory." Brown v. Astrue, 2009 WL 64117, *4 (N.D. Tex. 2009) (unpubl.) (collecting cases). To whatever extent the ALJ modified Dr. Lankford's RFC analysis, the modifications were based upon the testimony of Ruiz. Thus, the ALJ found Ruiz to be generally believable, but was not convinced that Ruiz was as limited as she had claimed. Dkt. No. 21-1, p. 25. Accordingly, between the testimony of Dr. Lankford and the limitations identified by Ruiz, there is substantial evidence in the record to support the conclusion that Ruiz can perform some work.

Ruiz has provided additional medical records to support her claim that she is disabled. Dkt. No. 30. The Court does not consider new evidence that was not before the ALJ at the time that she rendered her decision. Burditt v. Massanari, No. A-00-CA-314 AA, 2001 WL 685522, at *8 (W.D. Tex. May 15, 2001). Furthermore, even if the Court were to consider the medical records, Ruiz is asking the Court to re-weigh the evidence, which it cannot do. Carey, 230 F.3d at 135.[6]

This administrative appeal should be denied.

**VI. Recommendation**

It is recommended that the petition for review of the denial of Disability Insurance Benefits filed by Priscilla Alejandra Ruiz be denied.

The parties have fourteen (14) days from the date of being served with a copy of this

---

[6] Ruiz is free to file a new application for benefits and submit her proffered medical evidence as part of that application.

15

Report and Recommendation within which to file written objections, if any, with the Honorable Fernando Rodriguez, Jr., United States District Judge. 28 U.S.C. § 636(b)(1). Failure to timely file objections shall bar the parties from a de novo determination by the District Judge of an issue covered in the report and shall bar the parties from attacking on appeal factual findings accepted or adopted by the district court, except upon grounds of plain error or manifest injustice. Alexander v. Verizon Wireless Servs., L.L.C., 875 F.3d 243, 248 (5th Cir. 2017).

      DONE at Brownsville, Texas, on March 4, 2019.

_____
Ronald G. Morgan
United States Magistrate Judge